Good morning. Good morning. You may proceed. Thank you. Good morning, Your Honors. May it please the Court, my name is Lucia Lee. On behalf of Christopher Flores, I'd like to reserve five minutes for rebuttal. The split-second decision by Officer Flores to fire a single round when faced with an aggressive and unpredictable assailant who already successfully harmed his partner and himself and who remained in striking distance to do so again as captured by video presents the classic case for granting qualified immunity. Based on the undisputed material facts as shown by video at Excerpt of Record 789, neither prong of the qualified immunity analysis is satisfied. When viewing the undisputed facts again shown by video, in light most favorable to Hampton, Flores did not violate any constitutional right, and in December 2019, it was certainly not clearly established that Officer Flores' single round under the totality of circumstances he faced was unlawful. Ms. Lee, I just want to make sure I understand. So I think our case law is clear that police officers may not continue to use deadly force when a suspect is wounded and does not pose a threat. Would you agree with that? That is the statement that Zion v. County of Orange stated. However, the en banc court here in the state of Hernandez v. Los Angeles clarified that the contours of the Zion analysis makes it distinguishable from this case in that Mr. Hampton was undisputably rising from the ground in the moments prior to the use of force. When in this case Mr. Hampton was rising, is it undisputed also that he did not have any weapons on him? At this stage of the proceedings, the video does show that he did not have a bottle on him, but even so, the record at frames 1188 to 1244 does show Mr. Hampton rising from the ground, and this puts it squarely within the second volley analysis of Estate v. Hernandez, where the court unanimously found that a second volley against a suspect rising from the ground, even when that suspect may have been wounded or in pain due to earlier shots, and despite that he didn't attempt to get closer to that officer, indicated that the individual was not clearly incapacitated, and the officer could reasonably conclude that the suspect continued to present an imminent threat justifying legal force. And in this case, just so that I understand, in this case he had at this point been shot six times, is that correct? Officer Hayes did fire six times, but in the moment, neither Officer Flores or Officer Hayes knew whether or not Mr. Hampton was struck by the bullets or if he was wounded, whereas in contrast to the video evidence that shows Mr. Hampton's continued and swift movements on the ground as rolling up and readying to rise from the ground again within striking distance of Officer Hayes, who had his back turned and was unable to defend himself, which is the basis of Officer Flores' imminent threat analysis that justified his use of force. And again, the facts here and Mr. Hampton's swiftness, body motion, and continued movement on the ground puts this case outside the realm of the third volley analysis in Estate of Hernandez, whereas there in Hernandez, that suspect was curled up in a ball in the fetal position, rolling away from the officer. And clearly here, the video shows that Hampton did not give such indication that he was subdued or clearly incapacitated such that Officer Flores should not act to intervene when Mr. Hampton was in striking distance from Officer Hayes. And indeed, Mr. Hampton did attempt to step up again and moved towards Officer Flores even after that challenged use of force. And so this puts us squarely in the second volley analysis of Estate v. Hernandez and Officer Flores was reasonable in finding Mr. Hampton an imminent threat. The court in denying qualified immunity also relied on other distinguishable cases such as Hopkins or Tan Lam that are very far afield from the facts here. In those cases, there had been a break in time or a break in the actions. In Hopkins, for instance, there had been a material change in the events in that the officer fired at the individual six times in close range, had time and wherewithal to call for medical, crossed the street, reloaded his firearm, and was able to get into defensive positions by placing himself behind vehicles to dodge a plaintiff that he knew and recognized was injured and had nothing in his hand. And therefore, the court found that that officer could delay or had alternative, less lethal options like a taser or a baton. Whereas here, of course, we know even from the video itself that Officer Flores did not have a baton, pepper spray was ineffective, Hampton continued to defy the commands and was undeterred even by Officer Hayes' lethal use of force. And Tan Lam was a post-trial case that, again, differed significantly factually from this case. The officer went into the bedroom of a frail individual who was in crisis. The individual tried to stab the officer with scissors. And then there was a break in the action in that the officer was able to remove himself from the bedroom, go down a hallway, speak to the individual's father to explain why he did what he did. He cleared a jam in his gun, called for help, and was in a defensive position around the hallway when the individual was, quote, stumbling down the hallway. And the officer fired, again, killing the suspect without warning. So those facts are very much distinguishable. And, in fact, Hart v. City of Redwood City distinguishes Tan Lam on the basis that the suspect in Hart, for instance, was moving swiftly and appeared in control of his body, similar to Hampton here. And so Tan Lam on those factors are also distinguishable from here. In evaluating qualified immunity and whether or not there was clearly established law in December 2019, the Supreme Court has repeatedly cautioned us that use of excessive force is an area of law, that the results depend very much on the facts of each case. And so officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts. And it's especially important for use of force because the court has recognized it is sometimes difficult for an officer to determine how the relevant legal doctrine, excessive force, will apply to the factual situation. And the question, again, is whether or not the officer violated a clearly established statutory or constitutional right of which a reasonable person would have known, and whether or not the officer had fair notice that his actions are unlawful. It protects all but the plainly incompetent or those who knowingly violate the law. And here the rights were not sufficiently definite that any reasonable officer in Officer Flores's shoes would have understood that he was violating it. And I just want to touch on the point that there are no material dispute of fact here because we have the opportunity to see the entire interaction with Mr. Hampton on video. And that video evidence is binding. Again, that's Excerpt of Record 789. The facts show that Hampton initiated the contact, continued attack, despite officers' attempts to restrain, evade, and commands to get on the ground, tried to subdue him with pepper spray, and even the lethal force of Officer Hayes did not render Mr. Hampton clearly incapacitated. He didn't surrender. He didn't stop. And his actions instead were rising at the moment that Officer Flores used force. Counsel, I understood your argument, I think in the papers, that it was reasonable for Mr. Flores that there was a mistake in his judgment, I think, in shooting this last shot. Was that not accurate? Mr. Flores did perceive that Hampton had a bottle in his hands, but this is reasonable because Mr. Hampton was moving fluidly the entire time. Even the video is a bit unclear at which moment Mr. Hampton dropped that bottle, and it is only with hindsight and the luxury of slowing down frame by frame would we ever see that Mr. Hampton dropped his bottle. Isn't that kind of sort of a quintessential question of fact that would best be served by a jury to make that determination? Well, even assuming that an officer or Officer Flores should have known or did perceive that Mr. Hampton did not have the bottle in his hand, according to the video, the court is still empowered to make a decision on whether or not Hampton posed an imminent threat, and Mr. Hampton did at that time. I see my time is almost up, so I'd like to reserve my remaining time. Okay. Thank you, Ms. Lee. We'll hear from counsel for Mr. Hampton. Good morning. Good morning. May it please the Court, Ty Clark on behalf of Plaintiff Apelli, Jamaica Hampton. When Defendant Christopher Flores shot Jamaica Hampton, Mr. Hampton was undisputedly unarmed, seriously injured, and on his hands and knees. This Court's precedent is clear that in such circumstances, officers have a duty, a requirement under the Fourth Amendment to reassess the danger in light of evolving circumstances. This Court made that clear at Wilcox, the Tanlam decision, the Zion decision, even all the way back to Hopkins, that case law has been clear that there is a duty to reassess that someone who presented a threat at one point may not continue to present that same threat. And here, the circumstances changed gravely. There was a first volley of shots. Mr. Hampton fell to the ground. It's undisputed that he dropped the bottle. Defendants' own experts concede that he was unarmed at all times. None of the cases that Defendant Appellant relies on involve an unarmed individual who's already grievously wounded and on the ground. Well, I think, I mean, it's your burden to come forward with clearly established law, not their burden to find clearly established law that supports them. And so the question, I think, here is, among other things, how do you deal with the fact that there's this very violent interaction, right? It's all happening extremely quickly. Shots are fired, and then he is plainly getting up at the very end of the interaction. And that is different than a case like Zion where it said he was not getting up. Taking the facts into light, most favorable to plaintiff, and taking their own defendant police practice expert statement, he was collapsing back to the ground at the time that Officer Flores shot his shot. But even in the situation— Well, but we can, I mean, we're watching the video, right? So in the video, it's apparent that he's down and then he starts to get back up. At least probably twice, once before the shot and then once afterwards. As the district court found, though, him getting back up is not dispositive. In Tan Lamb, you have an individual decedent who had gotten up and was walking— it's undisputed that he's walking down a narrow hallway to the defendant officer there. In Hopkins, it's undisputed that the decedent who had already assaulted the officer, already been shot once, gets up and is following him. The language there was at a brisk pace. That's true. I mean, the issue, obviously, in those cases is just the timing and how fast it happened, right? So, I mean, we're looking at Supreme Court precedent that talks about, you know, has to squarely govern the facts and things along those nature for qualified immunity. I'm not talking about the constitutional violation. I'm talking about the qualified immunity. We have cases like Hopkins and Tan Lamb, but they do involve a greater time interval, it would seem, than what we have here. So how do you get around that issue from a qualified immunity standpoint? Well, it's a greater time interval. The crucial inquiry is the time to reassess. And here it's undisputed that Officer Flores had time to reassess because that's exactly what his fellow officer, Officer Hayes, did and has testified to multiple times, that he reassessed the danger after Mr. Hampton fell to the ground, determined that there no longer was a danger, was so confident in that determination that he was already taking the process of summoning medical aid for Mr. Hampton. So while I agree with Your Honor that there was more time in Tan Lamb and Hopkins, the crucial inquiry is the time to reassess. Here, Officer Flores had that. We know that because Officer Hayes had that. He was in the exact same situation. Well, I don't know about that. I mean, Officer Hayes was the one who fired the shots. This is all happening so fast, right? You watch the video and everything happens extremely quickly. And so to slow it down in the way that we're doing is a little bit difficult under Supreme Court precedent, which talks about the need for officers to make split-second judgments and things of that nature. Just because the shooting happened quickly does not mean that there was such a short time window. Here, Officer Flores is the reason that he rushes the situation. He's the one who approaches Mr. Hampton while he's on the ground. You can see in the video that you referenced that he approaches more than a car-distance length. He's the one who narrows the time window. But even beyond that, in Zion, the time window is virtually identical, about five seconds in both cases. And there was a dispute in Zion whether the decedent there was getting up again. So here I think this is exactly the kind of factual inquiry for a jury to decide. But I would point to the Court's language in Zion where it says, an officer violates a clearly established right when he shoots an incapacitated suspect who no longer poses a threat, even if the suspect previously had a weapon.  But, I mean, isn't it clear from the video that he's not incapacitated? He's getting up. He's on his hands and knees. He's not rising to his feet. He maybe gets up onto one foot. But I would not, I think in the light most, in the facts taking him in the light most favorable to plaintiffs, as this Court must at this stage, I would not say it's definitive that he's not, that he's getting up, that he's capable to rise. I mean, here don't we get into the issue of Hernandez and the distinction that the en banc court drew between the second and the third volleys there? Because in the third volley, again, that's what split the en banc court. But the majority concluded that there was no basis to conclude the assailant there was getting up. But the second shot, the Court found unanimously that he was getting up and, in fact, concluded not just that there was no clearly established violation, but that there was no violation at all. And so if there's no violation there as a matter of law, how is this one clearly established in the other direction? Hernandez involves an armed suspect. This is an unarmed suspect. I think it's a very easy distinguishing factor. There's a completely different situation in that one is armed with a knife. I've watched the video in Hernandez. I think he's rising more than in this. But I think more crucially, more fundamentally, armed suspect versus unarmed suspect. No, that's a good distinction. I mean, the thing is there are other distinctions that one could say cut the other way, right? The distance between the officers here seems much closer than in Hernandez. It's true that Hernandez had a knife, but he was also so far away from everybody that it didn't seem that the knife was an imminent threat to anybody who was right around. And, of course, here you had Mr. Flores who had, excuse me, Mr. Hampton, who had assaulted the officers repeatedly for almost a minute in the middle of the street where people were walking by. That had not happened in Hernandez either. So there's some facts, I grant you, that are a little different, perhaps more favorable to you than Hernandez. But there are other facts that do seem less favorable. And at the end of the day, the question is just is it clearly established that there's a violation? This Court said in Johnson v. Myers that it's whether a case is sufficiently similar to allow a meaningful comparison. I would contend scion sufficiently similar. Injured suspect, first volley of shots after an assault on an officer, and two civilians in Zion where you have him stab two people in an apartment, runs out, stabs an officer, is running back, shot to the ground, falls to the ground, that first volley not challenged. That officer then shoots or the other officer then shoots him on the ground about five seconds later. Again, identical time. There's a dispute whether he's standing up. There, that suspect, there's a dispute whether he has the knife still in his hand. Here, undisputed, that he was unarmed. So I'd say that is sufficiently similar to allow a meaningful comparison. Tan lamp, sufficiently similar to allow a meaningful comparison. You have a suspect who's assaulted an officer, who's stabbed that officer, who's now on his feet, that's more dangerous than what Officer Flores faced here, and is approaching him in an enclosed space, and that officer doesn't have backup. Here, Officer Flores has backup. That's sufficiently similar to allow a meaningful comparison. Hopkins, sufficiently similar. That's not the test, though. The test is not sufficiently similar to draw a meaningful comparison. The test is does it squarely govern the specific facts of this case. That's what the Supreme Court has said. So that seems quite a bit different than what you're arguing. I would say that Zion and Tan lamp squarely govern, and Hopkins as well. They squarely govern. They involve incapacitated suspects who at one point posed a threat, and the officers are required to reassess that threat in evolving circumstances. That squarely governs here. As this Court has said, you can't have you don't can't require factually identical, and that's what the defendant appellant is asking this Court to do. They're asking you to make it factually identical and say it's not clearly established because it's not factually identical. But these facts are so similar. Again, taking this Court's language in Tan lamp, at the time of the incident, case law had made clear that an officer violates the Fourth Amendment by shooting a person who had previously injured someone but no longer posed an immediate threat. That's exactly what happened here. It's exactly the case in front of this Court. Okay. I don't think there's any more questions for you. So unless you have anything else you want to offer, we'll hear rebuttal. Thank you, Your Honor. I appreciate it. Thank you. Plaintiff urges this Court to consider the precise moment that Flores is shot, which is the moment of threat analysis that the Supreme Court has recently rejected. This circuit considers the totality of circumstances, which includes all of the conduct leading up to, during, and even all of the factors that an officer reasonably perceived during the incident itself. And here, the video shows that Hampton was clearly not incapacitated before, during, or even immediately after Flores' use of force. And certainly no case law has indicated that squarely governs the circumstances here. Even in Estate of Hernandez, my friend on the other side mentions that some of the the suspect was 36 feet away from the officer, and the Court there indicated that distance was well beyond striking distance. So it must not be that the ability for the suspect to use the weapon itself on the officer is dispositive on the imminent threat analysis. But again, because of Hampton's undisputed body motions in rising, indicating that he had the ability to control his movement, move swiftly, and being within striking distance of Officer Hayes, it puts us back in the second volley analysis of Estate v. Hernandez. Officer Hayes' analysis of what happened and whether or not Hampton posed an imminent threat was, one, in a different time. But two, it's undisputed that Hampton's rise was not seen by Officer Hayes. Officer Hayes had his back turned. He did not see the conduct that is undisputed and shown on video. So his assessment of threat is immaterial. We must gauge the reasonableness of use of force from Officer Flores' perspective, and he was responding to the change in circumstance of Hampton rising from the ground. Again, it is plaintiff's burden to establish that there has been clearly established right and present cases that squarely govern the facts of this case. And here, there simply are no such case. Zion is distinguishable based on the fact that Hampton was rising. Hopkins was a wholly different case that did not have any video evidence, as we have the luxury here. Tanlam also, again, is a case that involves a more significant break in distance, in the officer having ability to remove himself or delay in a defensive position, whereas here, Officer Flores cannot delay because Hampton was within striking distance of Hayes as he was rising. And so it was objectively reasonable for Officer Flores to deem Hampton a immediate threat, pursuant to a state of Hernandez's second volley analysis, and there was also no clearly established law or case that squarely governs the facts here. And because qualified immunity allows officers like Flores to reasonably do their jobs, face the dangerous, tense, and rapidly evolving situations in good faith, especially when the law was not clearly established at the time of the incident, he did not violate any constitutional right, and he is entitled to qualified immunity. So we ask the court to reverse and grant qualified immunity. Thank you. Thank you. We thank both counsel for the briefing and arguments. This case is submitted. That concludes our calendar for the morning. We'll stand in recess until tomorrow. All rise. This report for this session stands adjourned.
judges: THOMAS, BRESS, MENDOZA